USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/11/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re DITECH HOLDING CORPORATION,                           :
                                                            :
                                        Debtor.             :
------------------------------------------------------------X
                                                            :
JAMES RAY,                                                  :                    1:25-cv-2064-GHW
                                                            :
                                        Appellant,          :          MEMORANDUM OPINION &
                                                            :                      ORDER
                        v.                                  :
                                                            :
STACEY TUTT,                                                :
                                                            :
                                        Appellee.           :
------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Although raised in three different proceedings in front of three different courts, the central

dispute that is the subject of this appeal is a single issue:  did James and Zinta Ray's mortgage loan

servicer meet its obligations under state and federal law in connection with their applications to

modify a mortgage loan taken out against their home?

James and Zinta Ray (collectively, the "Rays") took out a loan from a predecessor of Ditech

Financial LLC ("Ditech") and Green Tree Servicing LLC ("Green Tree") (collectively, "Debtors") in

2000, secured by a parcel of real property and a mobile home located in South Carolina.  The terms

of their loan required them to make smaller monthly payments and a larger, one-time payment in

2015.  As the date of that balloon payment approached, the Rays sought to modify the terms of their

loan.  Those efforts were unsuccessful, and the loan went into default.  Green Tree assigned the loan

to Wells Fargo Bank, N.A. ("Wells Fargo") in June 2016.  In July 2016, Wells Fargo initiated

foreclosure proceedings.  Later that year, Zinta Ray filed for bankruptcy in the United States

Bankruptcy Court for the District of South Carolina.  As part of the bankruptcy proceedings, the Rays attempted once more to modify the terms of their loan.

Parallel to the Rays' efforts to modify their loan, the Consumer Financial Protection Bureau (the "CFPB") and the Federal Trade Commission (the "FTC") sued Green Tree, alleging violations of various consumer protection laws—including laws requiring mortgage loan servicers to maintain adequate procedures to allow for loan modification.  The two agencies and Green Tree entered a consent decree in April 2015.  Nearly four years later, in February 2019, Green Tree and Ditech filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  James Ray, proceeding *pro se,* filed a proof of claim against Debtors, alleging, among other claims, that Debtors had not adequately afforded him an opportunity to apply for loan modification.

Following briefing and a sufficiency hearing, the Bankruptcy Court disallowed that claim in a comprehensive, careful opinion.  Mr. Ray appealed to this Court.  Because the Bankruptcy Court failed to expressly consider two possible bases for Mr. Ray's claim under the Real Estate Settlement Procedures Act and a possible claim under the South Carolina Unfair Trade Practices Act and did not expressly consider whether to grant him leave to amend his proof of claim, the Bankruptcy Court's decision is affirmed in part and vacated in part and the Court remands to the Bankruptcy Court for further proceedings consistent with this opinion.

## II.    BACKGROUND[1]

### A.    Appellant's Loan

In September 2000, the Rays executed a promissory note in favor of Conseco Finance Servicing Corporation ("Conseco") in the amount of $80,750 (the "Note").  Under the terms of the

---

[1] Unless otherwise noted, the facts were taken from the record designated on appeal and the parties' briefs before this court.  The original proof of claim is not in the Bankruptcy Court's record.  Any references to the claim come from the portions cited by the parties and by the Bankruptcy Court.  In light of Appellant's *pro se* status, the Court also considers supplemental allegations made by Appellant in opposition to the Appellee's objection to his proof of claim in the Bankruptcy Court record.  *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (deeming factual allegations contained in *pro se* plaintiff's brief to "supplement" his pleading).

Note, the Rays were required to pay $72,475.26 on October 3, 2015 as a balloon payment.  The Note was secured by a mortgage (the "Mortgage") on a property located at 801 Kerri Road, Hopkins, South Carolina, 29061.  Conseco became Green Tree, which later became Ditech.  On June 21, 2016, Ditech assigned the mortgage to Wells Fargo as Trustee for Green Tree 2008-MH1.[2]  At some point in 2020, Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan.

Mr. Ray sought to have the mortgage loan modified on several occasions.  In 2012, he sought to have his loan modified under the Home Affordable Modification Program (the "HAMP").  Mr. Ray alleges that despite submitting the required documentation, Green Tree did not respond to the Rays' communications.  In January 2016, he alleges that he again submitted a loan modification request before Green Tree became Ditech.  Mr. Ray alleges that the Rays received no response to this request.  He also alleges that he submitted a request for loan modification pursuant to an order in Zinta Ray's bankruptcy proceeding in 2017.  Mr. Ray alleges that he received no response to that request either.

B.    **Appellant's Foreclosure and Bankruptcy Proceedings**

On August 15, 2016, Wells Fargo filed a foreclosure action against the Rays in South Carolina state court.  *See Wells Fargo Bank, N.A. as Trustee for Green Tree 2008 MH-1 v. James E. Ray, Zinta T. Ray, CACH, LLC*, No. 2016-CP-40-04867 (S.C. Ct. Com. Pl., Richland Cty., Aug. 15, 2016).  In it, Wells Fargo alleged that the balloon payment was due and demanded full payment of $69,929.56, at an interest rate of 13.74%, plus attorney's fees and costs.  The foreclosure action was dismissed on September 12, 2017, but was restored to the state court's active docket on January 5, 2021.

---

[2] Mr. Ray argues that there is competing evidence as to who "owned the mortgage" in 2019.  *See* Dkt. No. 6 at 4 ("Br."). It is possible that Mr. Ray is confusing the Note and the Mortgage, which are "separate securities for the same debt." *Bank of America, N.A. v. Draper*, 746 S.E.2d 478, 481 (S.C. 2013) (internal quotation omitted).

On June 29, 2022, the Rays filed an amended answer and counterclaims. They asserted the defense of unclean hands because Wells Fargo had allegedly misled the Rays about the prospect of a loan modification. They also alleged that Wells Fargo had violated the South Carolina Unfair Trade Practices Act, S.C. Ann. §§ 39-5-10, *et seq.* ("SCUTPA"). The Rays alleged that Wells Fargo violated SCUTPA because Wells Fargo and the Rays had entered into a loan modification agreement, but Wells Fargo then declined to honor those modifications. Wells Fargo moved for summary judgment on the Rays' claims. The South Carolina state court has denied that motion.[3]

On November 11, 2016, Zinta Ray filed a petition for relief under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of South Carolina (the "South Carolina Bankruptcy Court"). *See In re Zinta Theresa Ray*, No. 16-br-5735 (Bankr. D.S.C., Nov. 11, 2016). On November 14, 2016, the South Carolina Bankruptcy Court issued an order regarding the procedures for loss mitigation and mortgage loan modification (the "LM Order").[4] The LM Order stated that the Bankruptcy Court preferred that any application for loan modification be submitted through a designated portal. An order confirming Zinta Ray's Amended Chapter 13 plan was entered on February 2, 2017. That order required Ms. Ray to seek loss mitigation options using the designated portal. As described above, Mr. Ray alleges that the Rays sought loan modification through the portal.

### C.    The Debtors' Bankruptcy and Appellant's Claim

On February 11, 2019, Ditech and Green Tree filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The Bankruptcy Court set June 3, 2019, as a deadline for consumer borrowers to file a proof of

---

[3] Appellee misstates the South Carolina state court decision as denying Mr. Ray's motion for summary judgment. While the state court did deny a motion for summary judgment, it was Wells Fargo's motion, not Appellant's.

[4] Throughout this opinion, the Court refers interchangeably to "loss mitigation" and "loan modification." These terms both refer to the Rays' efforts to modify the terms of their loan so as to avoid foreclosure.

claim. ECF 496.[5]  On September 26, 2019, the Bankruptcy Court confirmed Debtors' third amended plan, which created the Consumer Claims Trust. ECF 1404.  On February 21, 2023, Appellee Stacey Tutt was named as successor Consumer Claims Trustee. ECF 4604.  Appellee is responsible for reconciliation and resolution of consumer creditor claims, including the distribution of proceeds to holders of allowed consumer creditor claims. ECF 1404.  She is exclusively authorized to object to consumer creditor claims. *Id.*

On April 24, 2019, Appellant filed his proof of claim, alleging "rejection damages" and "illegal loan practice" as the bases of his claim. ECF 5267 at 3 ("Trustee Reply").  He attached a copy of a letter from the CFPB dated September 2, 2016, which included a check payable to the Rays in connection with a settlement between Green Tree, the CFBP, and the FTC. *Id.*  Mr. Ray asserted an unsecured claim in the amount of $120,919.00, itemized as follows:  $1,210 for "legal bankruptcy filing," $100,000 in "punitive damages," and $19,709 for which a basis was not stated. *Id.*  The Consumer Claims Trustee filed an omnibus objection on June 12, 2020, objecting to the Claim on the grounds that it failed to attach sufficient documentation. ECF 2542.

On July 9, 2020, Appellant filed his opposition to the objection. ECF 2669.  Appellant explained that the basis for his claim was alleged unlawful practices connected to his requests to modify the loan. *Id.* at 3.  He alleged that the conduct began when Green Tree owned the loan and has "continued to some degree" under Ditech. *Id.*  He clarified that the amount requested in his claim was not a demand for punitive damages, but a demand for increased payments in interest and principal as a result of allegedly unlawful refusals to modify the loan. *Id.*

On November 21, 2024, Appellee filed her reply. *See generally* Trustee Reply.  She construed Mr. Ray as raising four claims:  (1) a claim for relief under the HAMP; (2) a breach of contract claim under the HAMP; (3) a claim under the Real Estate Settlement Procedures Act ("RESPA"); and (4)

---

[5] A citation to "ECF" refers to the docket in the Bankruptcy Court in this action, while a citation to "Dkt. No." refers to the docket in this Court.

a claim under the Fair Debt Collection Practices Act (the "FDCPA"). *Id.* She argued that all four claims should be dismissed for failure to state a claim under the Federal Rule of Civil Procedure 12(b)(6) standard. *Id.* at 11–12. On the first claim, she argued that the HAMP did not confer a private right of action, and that any claim relating to loan modification under the HAMP would need to arise out of a contract claim related to an agreement under the HAMP. *Id.* at 13–16. She then argued that not only had there been no agreement to modify the loan under the HAMP, but that any possible contract claim was also time-barred. *Id.* at 16–19. She also argued that Mr. Ray had not pleaded sufficient facts to state a claim under RESPA, and that any such claim would also be time-barred. *Id.* at 20–22. She then argued that Mr. Ray had not stated a claim under the FDCPA because he had not adequately alleged that Ditech was a debt collector, he had not adequately pleaded that Ditech harassed him, and that any such claim was also time-barred. *Id.* at 23–26. The Trustee finally argued that Mr. Ray was not entitled to punitive damages. *Id.* at 26–27.

On December 6, 2024, Mr. Ray filed a sur-reply. ECF 5287 ("Sur-reply"). In it, he alleged that he had attempted to modify his loan three times: first in November 2012, next in January 2016, and finally in March 2017. *Id.* at 1. He alleged that Debtors "ignored or delayed responses, contravening established consumer protection obligations." *Id.* He clarified that these "obligations" were pursuant to a consent decree entered between the CFPB and the FTC and Green Tree. *Id.* at 1–2. He argued that the consent decree "provide[s] a strong evidentiary foundation" to support his allegations. *Id.* at 3. Next, he alleged that his mortgage balance "inexplicably soared" in 2019, suggesting "potential violations of the Truth in Lending Act," and that once the servicing of the loan was transferred to Shellpoint no notice was provided as required by the Truth in Lending Act ("TILA") and RESPA. *Id.* at 2. Finally, he argued that Debtors had failed to report the foreclosure action brought by Wells Fargo in the bankruptcy proceedings. *Id.* He argued that this and the other violations he alleged justified the application of the doctrines of judicial estoppel and unclean hands

to "prevent the Debtors from benefiting from their" alleged unethical conduct and "obtain[]
equitable relief." *Id.* at 3.

On December 19, 2024, the Bankruptcy Court held a hearing on the Trustee's omnibus
objections, including her objections to Mr. Ray's proof of claim. *See* ECF 5298 ("Tr."). The
Bankruptcy Court heard additional argument from Mr. Ray on several points, including further
clarification of his theory of damages, *id.* at 12:24–13:12, and on his alleged requests for loan
modification, *see, e.g.*, *id.* at 15:25–16:5 ("[W]e did a second [loan modification request] when
Greentree became Dit[e]ch and they received the [consent decree] order, they . . . sent us another
loan modification application. We filled that one out and sent that one back. They didn't respond
to that one and continued to attempt to collect."). Following additional argument on Mr. Ray's
theory of damages, the Bankruptcy Court denied Mr. Ray leave to file an administrative expense
claim. *Id.* at 31:23–32:2.

### D.    The Bankruptcy Court Order

On January 23, 2025, United States Bankruptcy Court Judge James L. Garrity issued a careful
and detailed opinion disallowing Appellant's claim. *See* ECF 5339 ("Bankruptcy Op."). Like
Appellee, Judge Garrity construed Mr. Ray's claims as seeking relief under several legal theories,
including relief under the HAMP, breach of contract, RESPA, and the FDCPA. Judge Garrity also
considered arguments and factual allegations Mr. Ray first raised in his sur-reply, including his
argument that he had stated a claim under TILA, and his arguments that the doctrines of judicial
estoppel and unclean hands applied.

The Bankruptcy Court agreed with the Appellee's argument that Mr. Ray's claims did not
state a claim under applicable state and federal law. The Bankruptcy Court held that there was no
private right of action under the HAMP, with the exception of when a borrower and a lender enter
into a trial payment plan ("TPP") agreement, which constitutes a contract that a borrower can
enforce in a civil action. *Id.* at 18–20. Since Mr. Ray had not asserted the existence of a TPP

agreement, he could not state a claim under the HAMP. *Id.* at 21–22. The Bankruptcy Court also held that Mr. Ray had not alleged facts to demonstrate that any loan modification contract had been formed, and that even if he had, any breach of contract claim was barred by South Carolina's three-year statute of limitations for contract claims. *Id.* at 22–24.

Next, the Bankruptcy Court held that Mr. Ray had not stated a claim under RESPA because he had not alleged that he had submitted a complete and timely loan modification package in 2012, and that he had not alleged actual damages as required for a RESPA claim. *Id.* at 24–27. The Bankruptcy Court also held that any claim arising out of the alleged failure to process his 2012 loan modification package was barred by RESPA's three-year statute of limitations. *Id.* 27–28.

The Bankruptcy Court then held that Mr. Ray could not maintain a RESPA claim against Green Tree for a faulty notice of transfer because he had not alleged that Green Tree was subject to the notice obligations. *Id.* at 28–30. Analyzing a potential FDCPA claim, the Bankruptcy Court agreed with Appellee that Mr. Ray had not alleged that Green Tree was a "debt collector" or that it had engaged in conduct barred by the statute. *Id.* at 32–35.

The Bankruptcy Court, construing Appellant's submissions to raise the strongest arguments they suggested, also addressed several allegations that the Appellant first raised in his sur-reply. First analyzing the Appellant's invocation of TILA, the Bankruptcy Court held that Mr. Ray had not sufficiently alleged that Green Tree was a creditor or an assignee or that he suffered any damages as a result of any alleged violation of TILA. *Id.* at 30–32. The Bankruptcy Court next held that the doctrine of judicial estoppel did not apply to the Consumer Claims Trustee's objection. *Id.* at 36–37. Finally, the Bankruptcy Court held that the exercise of discretion to apply the doctrine of unclean hands did not favor Appellant. *Id.* at 37–38. Accordingly, the Bankruptcy Court disallowed Appellant's claim. *Id.* at 38.

E.    **Mr. Ray's Appeal**

On March 12, 2025, Appellant James Ray, proceeding *pro se*, appealed the Bankruptcy

Court's order, raising four arguments.[6]  First, he argued that the Bankruptcy Court's application of

the doctrine of unclean hands was erroneous because Ditech had allegedly failed to disclose the

pending foreclosure action against the Rays in its Bankruptcy Court disclosures.  Br. at 2.  Second,

he argued that the Bankruptcy Court erred in conducting a sufficiency hearing rather than an

evidentiary hearing.  *Id.* at 6.  Third, he argued that the Bankruptcy Court had ignored evidence he

argues was relevant, specifically as related to the owner of the loan.  *Id.* at 6–7.  Fourth, he argued

that the Bankruptcy Court had erred in its application of the Rule 12(b)(6) standard to *pro se* litigants

by failing to "construe [his] allegations liberally," "grant him leave to amend," or "address [s]tate[]

[l]aw theories" like wrongful foreclosure or unfair trade practices.  *Id.* at 6.  He also argued that the

Bankruptcy Court had not considered any potential claims arising out of Green Tree's alleged

violation of the 2015 CFPB/FTC consent order.  *Id.*

On May 5, 2025, the Consumer Claims Trustee filed a brief in opposition.  Dkt. No. 9

("Appellee Br.").  She first argued that the Bankruptcy Court did not err in its application of the

doctrine of unclean hands because Debtors had met their disclosure obligations and because any

possible non-disclosure was not related to Mr. Ray's claim.  *Id.* at 14–21.  Addressing Mr. Ray's

claims concerning the application of Rule 12(b)(6) to his claim, Appellee accepted that Rule 12(b)(6)

applied to a Bankruptcy Court's evaluation of an objected-to proof of claim but argued that

Appellant had not identified any causes of action for which the Bankruptcy Court had failed to

construe his allegations liberally.  *Id.* at 21–26.  Appellee then argued that the Bankruptcy Court

considered both the loan ownership evidence and the consent order evidence.  *Id.* at 26–30.

---

[6] Mr. Ray's submission states more than four bases for his appeal.  However, many of his arguments repeat and overlap. In light of Mr. Ray's *pro se* status, the Court consolidates his submission to raise the strongest possible bases of appeal it suggests.  *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

Appellee also argued that the Bankruptcy Court correctly applied the statutes of limitations to Mr. Ray's claim. *Id.* at 30–31. Finally, Appellee argued that Mr. Ray's reference to state law theories improperly raised new arguments on appeal, and that even if the Court did consider those arguments, Mr. Ray has not stated a claim against Debtors under either SCUTPA or any wrongful foreclosure theory and the Court should abstain from considering a wrongful foreclosure claim under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *Id.* at 31–38. Appellant did not file a reply brief.

## III.    LEGAL STANDARD

### A.    Standard to Evaluate a Proof of Claim

"In a bankruptcy proceeding, a creditor may assert a right to payment from the debtor by filing a proof of claim." *In re Residential Cap., LLC*, 563 B.R. 477, 486 (S.D.N.Y. 2016), *aff'd sub nom. Gray v. ResCap Borrower Claims Tr.*, 706 F. App'x 16 (2d Cir. 2017) (citing Fed. R. Bankr. P. 3001 and 11 U.S.C. § 501). "A 'claim' is a right to payment or to an equitable remedy for breach of performance if such a breach provides a right to payment, 'whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured.'" *Id.* (quoting 11 U.S.C. § 101(5)). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10)(A).

Under 11 U.S.C. § 502, a claim is "deemed allowed, unless a party in interest . . . objects." Once a party objects—as the Appellee did here—courts employ a burden-shifting framework to assess the validity of a claim. *See In re St. Johnsbury Trucking Co., Inc.,* 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997) *aff'd,* 221 B.R. 692 (S.D.N.Y. 1998) *aff'd,* 173 F.3d 846 (2d Cir. 1999). Because the proof of claim is *prima facie* evidence of the validity and amount of the claim, "the objector bears the initial burden of persuasion." *In re Oneida Ltd.,* 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *see also* Fed. R. Bankr. P. 3001(f). The objector's burden is to "produce[] 'evidence equal in force to the

prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *In re Oneida Ltd.,* 400 B.R. at 389 (quoting *In re Allegheny Intern., Inc.,* 954 F.2d 167, 173–74 (3d Cir. 1992)). Once the objector has produced sufficient evidence, the burden shifts back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.* Thus, "[u]ltimately it is the claimant . . . who bears the burden of persuasion as to the allowance of [his] claim." *In re Residential Capital, LLC,* No. 13-cv-8317, 2014 WL 1760312, at *6 (S.D.N.Y. May 1, 2014) (quoting *In re Feinberg,* 442 B.R. 215, 220–21 (Bankr. S.D.N.Y. 2010)). In other words, "[t]he claimant must prove the claim, not sit back while the objector attempts to disprove it." *In re St. Johnsbury Trucking Co., Inc.,* 206 B.R. at 323.

A bankruptcy court can disallow a claim if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . ." 11 U.S.C. § 502(b)(1). "To determine whether a claim is unenforceable 'under any agreement or applicable law,' . . . the bankruptcy courts apply the applicable non-bankruptcy law." *In re Residential Cap., LLC,* 563 B.R. at 486 (citing *Raleigh v. Illinois Dep't. of Revenue,* 530 U.S. 15, 20 (2000)); *see also Butner v. United States,* 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Therefore, bankruptcy courts apply "federal pleading rules . . . in assessing a proof of claim's validity." *In re Residential Cap., LLC,* 563 B.R. at 486. The Bankruptcy Court here applied the standard under Federal Rule of Civil Procedure 12(b)(6) to determine the legal sufficiency of Plaintiff's claims. Bankruptcy Op. at 16 (citing Fed. R. Bankr. P. 7012(b)).

To determine whether a proof of claim should be disallowed, a Bankruptcy Court must determine if the claim "allege[s] sufficient facts, taken as true, to state a plausible claim for relief." *See Johnson v. Priceline.com, Inc.,* 711 F.3d 271, 275 (2d Cir. 2013) (discussing standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal,* 556 U.S. 662,

679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court must determine "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Ultimately, determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because he is proceeding *pro se,* the Court will liberally construe Mr. Ray's submissions in construing his presentation of issues for appeal and his purported bases for appeal, as it would in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See, e.g., Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . "); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) ("submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest"* (emphasis in original)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## B.    Scope of Review

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of the bankruptcy courts, as well as non-final, interlocutory orders under specific circumstances or with leave of the bankruptcy judge. *See* 28 U.S.C. § 158(a). An order of a bankruptcy court is final

for purposes of an appeal to a district court where—as here—it "finally dispose[s] of discrete disputes within the larger case." *In re Fugazy Exp., Inc.,* 982 F.2d 769, 775 (2d Cir. 1992) (emphasis and internal quotation marks omitted).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision[] below." *Freeman v. Journal Register Co.,* 452 B.R. 367, 369 (S.D.N.Y. 2010). The district court may not consider evidence outside the record. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived; and, unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Lionel Corp.,* 29 F.3d 88, 92 (2d Cir. 1994) (declining to consider argument not raised below because failing to consider the argument would not "result in a possible miscarriage of justice." (quoting *Radix Org., Inc. v. Mack Trucks, Inc.*, 602 F.2d 45, 48 (2d Cir. 1979))); *see also, e.g., In re Barquet Grp., Inc.,* 486 B.R. 68, 73 n.3 (S.D.N.Y. 2012) (citing *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.,* 419 F.3d 115, 126 (2d Cir. 2005)).

## C.    Standard of Review

District courts will overturn a bankruptcy court's factual findings only if clearly erroneous but must conduct a *de novo* review of its legal conclusions. *See In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 988 (2d Cir. 1990). Clear error is a high bar—a district court may overturn a bankruptcy judge's factual finding only if "on the entire evidence [the court] is left with the definite and firm conviction that a mistake has been committed." *In re CBI Holding Co., Inc.,* 529 F.3d 432, 449 (2d Cir. 2008) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948)). A district court should not overturn a bankruptcy court's decision if an error is harmless, meaning the error "is not inconsistent with substantial justice or does not affect the substantial rights of the parties." *In re Cavalry Const., Inc.,* 428 B.R. 25, 42 (S.D.N.Y. 2010), *aff'd sub nom., In re Cavalry Const.,* 425 F. App'x 70 (2d Cir. 2011) (quoting *In re Adler, Coleman Clearing Corp.,* 204 B.R. 99, 106 (Bankr. S.D.N.Y. 1997)).

## IV.    DISCUSSION

Although the Bankruptcy Court correctly determined that Mr. Ray's proof of claim did not plead sufficient facts to state a claim under the HAMP (and any related claims under contract law), the FDCPA, and TILA, it failed to address all possible claims under RESPA and did not consider a possible claim under SCUTPA.  The Bankruptcy Court also did not expressly evaluate whether to grant Mr. Ray leave to amend his proof of claim.  Accordingly, the Court affirms the Bankruptcy Court's order in part, vacates it in part, and remands with instructions to consider the issues not considered in the original opinion.

As detailed above, Mr. Ray asserts four bases for appeal:  first, that the Bankruptcy Court erred in not conducting an evidentiary hearing; second, that the Bankruptcy Court erred in its application of the doctrine of unclean hands; third, that the Bankruptcy Court erred in failing to consider evidence related to ownership of the loan; and finally, that the Bankruptcy Court misapplied the Rule 12(b)(6) standard to his *pro se* submissions, including by not granting him leave to amend.  The Court addresses each in turn below.

### A.    Sufficiency Hearing

The Bankruptcy Court did not err in deciding to reach a decision on Mr. Ray's claim on the basis of a sufficiency hearing rather than an evidentiary hearing.  "Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion."  *In re Gordon*, 577 B.R. 38, 49 (S.D.N.Y. 2017) (citing *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 119 n.5 (2d Cir. 2003), *abrogated on other grounds*, *In re Zarnel*, 619 F.3d 156 (2d Cir. 2010)).  "A bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where 'the record provided ample evidence on which the court could make such a decision.'"  *Id.* (quoting *C–TC 9th Ave. P'ship v. Norton Co. (In re C–TC 9th Ave. P'ship)*, 113 F.3d 1304, 1313 (2d Cir. 1997)).  "It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues

of material fact that a Bankruptcy Court cannot decide based on the record." *In re AMR Corp.*, 490 B.R. 470, 479 (S.D.N.Y. 2013). If "the core facts are not disputed, the bankruptcy court is authorized to determine contested matters . . . on the pleadings and arguments of the parties, drawing necessary inferences from the record." *Id.* (internal quotation marks omitted).

The Bankruptcy Court did not abuse its discretion in deciding to hold a sufficiency hearing because the issues it decided could be decided based on the evidence on the record and there were no disputed issues of material fact. The Bankruptcy Court's decision did not turn on a disputed issue of fact; rather, it concluded that Mr. Ray had not stated a claim either because his claims under some statutes were barred by statutes of limitations or because he had not alleged sufficient facts to state a claim under applicable law. Thus, the Court cannot conclude that the Bankruptcy Court abused its discretion in holding a sufficiency hearing.

### B.    Consideration of Loan Ownership Evidence

The Bankruptcy Court did not ignore evidence that Green Tree still owned the loan. The Bankruptcy Court explicitly acknowledged Mr. Ray's assertion that "Shellpoint indicated that Green Tree remained the mortgage's owner." Sur-reply at 2; Bankruptcy Op. at 29. The Bankruptcy Court then considered Appellant's claim that Green Tree's ownership of the loan was evidence that required TILA notices had not been properly provided. Bankruptcy Op. at 30. As the Bankruptcy Court correctly noted, if Green Tree had indeed been owner of the loan, then no notice under TILA was necessary at all because TILA's notice obligations apply following a transfer of ownership. *See* 15 U.S.C. § 1641(g)(1) ("[N]ot later than 30 days *after the date on which a mortgage loan is sold* or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." (emphasis added)). Although the Bankruptcy Court did not explicitly consider Mr. Ray's argument in the alternative—that notice of transfer to Wells Fargo had not been provided—this too was not in error because that is not a claim that Mr. Ray could maintain against Debtors. The statute by its terms imposes notice obligations on

the new owner or assignee. *Id.* Here, that is Wells Fargo. Thus, even crediting Mr. Ray's allegation that Green Tree remained the owner of the loan, the Bankruptcy Court correctly concluded that this fact did not give rise to a claim by Mr. Ray against any Debtor.

### C.    Unclean Hands

The Bankruptcy Court did not abuse its discretion in declining to apply the doctrine of unclean hands. "Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine." *PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Weiss v. Mayflower Doughnut Corp.*, 135 N.E.2d 208, 210 (N.Y. 1956)). The application of the doctrine of unclean hands "rests with the discretion of the [bankruptcy] court . . . ." *In re Murphy*, 331 B.R. 107, 135–36 (Bankr. S.D.N.Y. 2005) (quoting *Aris-Isotoner Gloves, Inc. v. Berkshire Fashions, Inc.*, 792 F. Supp. 969, 969–70 (S.D.N.Y.), *aff'd*, 983 F.2d 1048 (2d Cir. 1992) (internal quotations omitted)). The Bankruptcy Court did not abuse its discretion in declining to apply the doctrine because Appellant had not demonstrated how any of the misconduct he alleges is connected with his claims. Mr. Ray alleges various unethical acts in his briefing in the Bankruptcy Court but focuses on Ditech's alleged failure to disclose the foreclosure proceeding Wells Fargo had initiated against the Rays. Br. at 5. However, like the Bankruptcy Court, the Court cannot ascertain how a foreclosure action initiated by an entity not before the Bankruptcy Court bears on Mr. Ray's claims against Debtors. Even crediting his allegation that Wells Fargo was not the owner of the loan, the state court docket from the foreclosure proceeding—which the Bankruptcy Court reviewed—demonstrates that no Debtor is involved in that action. *See* Bankruptcy Op. at 10 n.17. Accordingly, the Court cannot find that the Bankruptcy Court abused its discretion in its application of the doctrine of unclean hands.

Appellant's argument that Debtors' alleged failure to disclose the ongoing foreclosure proceedings led the Bankruptcy Court to discount his claims as "stale grievances," Br. at 5,

misapprehends the Bankruptcy Court's holding that certain of his claims were time-barred. The Bankruptcy Court held that statutes of limitations barred some of Appellant's claims because he had not filed any action within the allowable time period after learning of the violations for which he now seeks relief. *See, e.g.*, Bankruptcy Op. at 27–28 (holding that RESPA claims would be barred by statute of limitations because it had been over three years since the date of the violation). The Bankruptcy Court's ruling was not, as Mr. Ray suggests, based on an abstract notion that his claims were stale. The Bankruptcy Court properly applied the clear statutory and common law limitations periods applicable to causes of action suggested by Mr. Ray's proof of claim and subsequent filings.

### D.    Application of Rule 12(b)(6) Standard to *Pro Se* Proofs of Claim

Although the Bankruptcy Court properly analyzed Mr. Ray's submissions under state law and several federal statutes and construed them to raise the strongest arguments they suggested, the Bankruptcy Court did not consider a possible claim under SCUTPA, nor did it consider possible claims under RESPA in connection to the alleged 2016 and 2017 loan modification applications. The Second Circuit has clarified that the liberal construction afforded to pleadings and briefs submitted by *pro se* litigants requires consideration of both potential federal and potential state law claims. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017). The Bankruptcy Court, in a well-reasoned and comprehensive opinion, construed Mr. Ray's filings as asserting claims under various federal statutes—the HAMP, RESPA, FDCPA, and TILA. Its consideration of his claims under the HAMP, FDCPA, and TILA was not in error, because Mr. Ray's claims were largely legally defective, even though—as he asserts—he had alleged facts suggesting wrongdoing. However, the Bankruptcy Court did not expressly evaluate each possible RESPA claim because it only analyzed a possible violation with respect to one of his three requests to modify his loan. The Bankruptcy Court also did not expressly evaluate some state law claims, including a possible claim under SCUTPA, a claim arising out of the consent decree, and a claim arising out of the alleged improper foreclosure action.

This Court will only decide some of the issues not decided below because the Court does not have the full record before it. "'In general, a federal appellate court does not consider an issue not passed upon below.'" *United States v. Gomez*, 877 F.3d 76, 92 (2d Cir. 2017) (quoting *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001) (internal quotations omitted)). "This general rule, however, is a prudential one, and we therefore have 'broad discretion' to consider issues that 'were raised, briefed, and argued in the [lower court], but that were not reached there.'" *Id.* (quoting *Booking*, 254 F.3d at 418–19). "We are 'more likely to exercise our discretion (1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding.'" *Id.* (quoting *Baker v. Dorfman*, 239 F.3d 415, 420 (2d Cir. 2000) (internal quotation marks omitted)).

Although the Court has the briefs submitted by the parties to both the Bankruptcy Court and to this Court, the Court does not have the original proof of claim because it is not part of the Bankruptcy Court record. The Bankruptcy Court and the Appellee's submissions both reference the facts alleged in the claim. *See, e.g.*, Bankruptcy Op. at 6; Trustee Reply at 15. As described in more detail below, some issues not decided by the Bankruptcy Court—including the claims arising out of the consent decree and the foreclosure proceedings—are purely legal. Others—including the possible SCUTPA claim and the RESPA claim arising out of the alleged 2016 and 2017 loan modification requests—may require the analysis of a more complete factual record. On these issues, the Court vacates the Bankruptcy Court's order in part and remands for further proceedings consistent with this opinion.

### i.       Federal Law Claims

Although the Bankruptcy Court did not err in disallowing Appellant's claim insofar as it raised claims under the HAMP, FDCPA, and TILA, it did not consider all of the claims Mr. Ray's submissions could be read to suggest under RESPA. As the Bankruptcy Court correctly noted, there is no private right of action under the HAMP. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d

769, 775, 782 (4th Cir. 2013) (affirming district court judgment holding that there is no private right of action under the HAMP.  Instead, under the HAMP, once a mortgage loan servicer determines that a borrower is eligible for loan modification, the servicer and borrower enter a "trial period plan" ("TPP") agreement, under which the servicer agrees to service the mortgage loan as it would "service a loan in forbearance."  *Id.*  at 773 (citing *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556–57 (7th Cir. 2012) (internal citations omitted)).  Therefore, for Appellant to recover for alleged violations of the HAMP, he would need to plead sufficient facts to allege the existence of a TPP agreement between him and one or more of the Debtors.  *Id.* at 775.  Since he did not, he could not maintain any HAMP claim.

The Bankruptcy Court correctly concluded that Mr. Ray had not stated a claim under the FDCPA.  To state an FDCPA claim, Appellant must allege facts demonstrating that a Debtor is a debt collector as defined by the FDCPA.  *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014) ("Debt collectors that violate the FDCPA are liable to the debtor for actual damages, costs, and reasonable attorney's fees.").  The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Mr. Ray did not allege sufficient facts to suggest that the "principal purpose" of Green Tree's business is debt collection, or that Green Tree "regularly collects or attempts to collect" on debts.  *Id.*  Further, "'[m]ortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.'"  *Jesse v. Wells Fargo Home Mortg.*, 882 F. Supp. 2d 877, 879 (E.D. Va. 2012) (quoting *Scott v. Wells Fargo Home Mortg. Inc.,* 326 F. Supp. 2d 709, 718 (E.D. Va. 2003) *aff'd*, 67 F. App'x 238 (4th Cir. 2003)); *see also* 15 U.S.C. § 1692a(6)(F) (exempting from statutory definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the

time it was obtained by such person"). Mr. Ray also does not allege that Green Tree acquired his loan from Conseco after it was in default. Thus, even construing Mr. Ray's submissions to raise the strongest possible arguments they suggest, his claim did not allege facts sufficient to establish liability under the FDCPA.[7]

The Bankruptcy Court also correctly concluded that Mr. Ray did not allege facts sufficient to state a TILA claim. TILA requires that the "new owner or assignee" of a "mortgage loan" must "notify the borrower in writing of such transfer" "not later than 30 days after" the transfer date. 15 U.S.C. § 1641(g). Thus, by its terms, TILA's notice obligations apply to the transferee or the assignee of a debt, rather than the original creditor. *Id.* Mr. Ray alleges that Shellpoint's notice stated that Green Tree was still the owner of the mortgage. He alleges that this implies that either a transfer to Wells Fargo never took place, or it did take place, and he was not provided the required notice under TILA. Under either scenario, Mr. Ray has not stated a claim against Debtors. Under the first, there was no transfer that would trigger the obligation to notify. Under the second, Wells Fargo—not any Debtor—was obliged to notify Appellant. Thus, Mr. Ray cannot state a claim against Debtors under TILA.

In holding that Appellant had not stated a claim under RESPA, the Bankruptcy Court did not expressly consider potential violations in connection with Mr. Ray's alleged 2016 attempt and alleged 2017 attempt to modify his loan. Appellant's claim can be construed to be alleging violations of RESPA's requirements that a mortgage loan servicer implement loss mitigation procedures or RESPA's requirements concerning notice of transfer, 12 U.S.C. § 2605. The Bankruptcy Court correctly concluded that Mr. Ray had not alleged sufficient facts to state a claim for violations of the transfer notice requirement. Under RESPA, upon a transfer of loan servicing, the transferor is

---

[7] Mr. Ray also alleges that his balance was misrepresented as $727,650.08, and that this is a potential TILA violation. He attaches to his brief a letter from Debtor Ditech as proof. *See* Dkt. No. 6-1 at 3. However, that letter also states that it is "not an attempt to collect a debt." *Id.*

required to provide notice fifteen days prior to the transfer of servicing, while the transferee is required to provide notice within fifteen days after.  12 U.S.C. §§ 2605(b)–(c).  Mr. Ray only alleges that the transfer occurred on March 1, 2020 and that it was "well outside the statutory time frame." The Bankruptcy Court noted that his claim did not allege when he did receive notice.  Without specific allegations as to when he actually received notice, this conclusory statement alone is insufficient to sustain his claims.  Therefore, he has not stated a claim under 12 U.S.C. § 2605.

The Bankruptcy Court correctly disallowed Mr. Ray's claim as it related to the Rays' 2012 attempt to modify their loan under the HAMP.  The implementing regulations for RESPA, known as Regulation X, 12 C.F.R. §§ 1024.1–1024.41, impose obligations on mortgage loan servicers to maintain policies and procedures relating to loss mitigation.  These procedures are triggered by the receipt of a complete loss mitigation application.  *Id.* § 1024.41.  The term "application" must be construed "expansively."  *See* Official Interpretations of Reg. X § 1024.41(b)(1)–(2).  A borrower must express an interest in seeking any form of foreclosure avoidance and must provide some information that a servicer would normally use in determining whether a borrower qualified for a loss mitigation option.  *See id.* § 1024.41(b)(1)–(3).  A servicer must comply with Regulation X for a borrower's loss mitigation application, "unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower" 12 C.F.R. § 1024.41(i) (2016).  At a minimum, a claimant alleging violations for the loss mitigation requirements of Regulation X must allege that he submitted a "complete loss mitigation application" under 12 C.F.R. § 1024.41(b)(1).  *See id.* § 1024.41(c) (listing servicer's obligation to evaluate a loss mitigation application "[i]f a servicer receives a *complete loss mitigation application . . . .*" (emphasis added)); *see also Vance v. Wells Fargo Bank, N.A.*, 291 F. Supp. 3d 769, 773 (W.D. Va. 2018) ("[T]he trigger for the Section 1024.41(c) evaluation and notification requirements is the servicer's receipt of a complete loss mitigation application").  To bring an action for violations of Regulation X, a claimant must also allege actual damages and may allege "additional damages" for "a pattern or

practice of noncompliance." *See* 12 U.S.C. §§ 2605(f)(1)(A)–(B). RESPA claims are subject to a three-year statute of limitations. *Id.* § 2614. Mr. Ray alleges that he submitted three loss mitigation applications: one in 2012, one in 2016, and one in 2017. Any claim arising out of the 2012 application is barred by the three-year statute of limitations because Mr. Ray submitted his proof of claim in 2019.

The Bankruptcy Court's failure to expressly evaluate a RESPA claim in connection with the alleged 2016 loan modification application or the alleged 2017 loan modification application merits remand. In general, a Bankruptcy Court may ignore arguments raised for the first time in a reply brief. *In re Teligent, Inc.*, 306 B.R. 752, 757 n.5 (Bankr. S.D.N.Y. 2004), *aff'd*, 326 B.R. 219 (S.D.N.Y. 2005). Here, the Bankruptcy Court did not do so categorically. The Bankruptcy Court's opinion—consistent with the solicitude with which a court must construe a *pro se* litigant's submissions—considered legal claims in connection with some allegations that Mr. Ray first raised in his sur-reply. *See, e.g.*, Bankruptcy Op. at 28–29 (considering legal claims suggested by Appellant's sur-reply allegations that he "received notice of servicing transfers 'well outside the statutory timeframe, impairing [his] ability to maintain timely payments.'" (citing Sur-reply at 2)). However, though the Bankruptcy Court considered legal claims suggested by allegations first raised in Mr. Ray's sur-reply, it did not consider factual allegations that supplemented legal theories suggested by factual allegations in earlier filings. Mr. Ray's proof of claim alleged that Green Tree ignored his 2012 loan modification application. *See* Trustee Reply at 3–4. In his sur-reply, Mr. Ray also alleged that the Rays submitted a loan modification application in January 2016 "after Ditech's succession to Green Tree." Sur-reply at 1. He also alleged that he submitted a loan modification application on March 3, 2017 via a portal "through [the Rays'] bankruptcy counsel." *Id.* Mr. Ray alleged that "Debtors ignored or delayed responses, contravening established consumer protection obligations." *Id.* He elaborated that the reference to "consumer protection obligations" is related to a consent order entered into by Debtor Green Tree and the CFPB and FTC. *Id.* at 1–2. He referenced both of his

later alleged attempts to modify his loan in the sufficiency hearing. Tr. at 15:25–16:7. The Bankruptcy Court's opinion did not expressly evaluate a RESPA claim in connection with the later attempts, nor did it identify its reasoning for declining to consider those factual allegations in the sur-reply. On this record, the Bankruptcy Court's decision to only consider some facts first raised in the sur-reply without expressly evaluating claims arising out of other facts without explanation merits remand. *See In re DeFlora Lake Dev. Assocs., Inc.*, 629 B.R. 354, 358 (S.D.N.Y. 2021) (remanding to the bankruptcy court upon finding that "the Bankruptcy Court did not adequately explain its ruling").

Though the facts alleged in the submission before the Court are not sufficient to state a claim in connection with either the 2016 application or the 2017 application, the Court remands this issue to the Bankruptcy Court to decide this issue in the first instance because it does not have the full factual record before it. For both the 2016 and the 2017 applications, Mr. Ray's submissions before the Court do not allege that the loan modification applications he submitted were complete. *See Vance*, 291 F. Supp. 3d at 774 (dismissing claim arising under Regulation X because plaintiff "fail[ed] to allege that the 'loan modification package' contained a complete loss mitigation application as defined in Section 1024.41(b)(1)" and also "fail[ed] to allege [the defendant] actually received a complete loss mitigation application"). The submissions before the Court suggest that the 2017 application was not even received by Debtors. Appellee's reply in support of her objection attaches Wells Fargo's memorandum of law in support of its motion for summary judgment in the state court foreclosure action, which cites deposition testimony from Zinta Ray's bankruptcy counsel indicating that counsel did not submit their application. *See* ECF 5267-14 at 5–6. That testimony is consistent with an affidavit from a records custodian from the company that maintains the online portal, which indicates that no application was submitted. *Id.* However, the record before the Court is incomplete because the record does not contain the original proof of claim. The

Court therefore declines to exercise its discretion to decide whether Appellant has stated a claim in connection with either the alleged 2016 application or the 2017 application.

For similar reasons, the Court does not decide if the Bankruptcy Court's reasoning in disallowing the claim in connection with the 2012 application applies to the alleged later applications. The Bankruptcy Court first held that Mr. Ray had not alleged actual damages caused by the violation. Mr. Ray alleged damages based on "additional payments in interest and [principal] resulting from [Green Tree]'s refusal to comply with laws governing mortgage lending." ECF 2669 at 3. The Bankruptcy Court held that Mr. Ray had not "demonstrate[d] how Green Tree's alleged violation of the loss mitigation procedures caused [his] inability to refinance the Loan with a third party." Bankruptcy Op. at 27. However, the 2012 application was made three years prior to the balloon payment's due date in 2015. Mr. Ray alleges that his 2016 application was made only a few months prior to the initiation of foreclosure proceedings, and the 2017 application was in connection with Ms. Ray's bankruptcy proceedings. Mr. Ray may not have had the same ability to refinance his loan with a third party in 2016 or 2017 as he did in 2012. The Bankruptcy Court also held that a RESPA claim in connection with the 2012 application was barred by RESPA's three-year statute of limitations. 12 U.S.C. § 2614. Mr. Ray filed his proof of claim in April 2019. Any claim arising out of the 2017 application would therefore not be barred. On the record before it, the Court cannot determine that the statute of limitations applies to the 2016 application, which Mr. Ray alleges he filed in January 2016. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 425 (2d Cir. 2008))). Accordingly, the Court remands to the Bankruptcy Court to decide whether Mr. Ray has stated a claim under RESPA in connection with the 2016 and the 2017 applications with the benefit of the full record.

24

ii.        **State Law Claims**

1.        **Wrongful Foreclosure**

Although the Bankruptcy Court did not expressly evaluate Appellant's wrongful foreclosure theory in its thoughtful and comprehensive opinion, Appellant has not adequately pleaded such a claim.  The Court construes Appellant to be alleging that the foreclosure proceedings initiated against him were improper because he had not been provided the opportunity to modify the terms of his loans.  Even assuming that Mr. Ray could assert this theory of liability, he cannot maintain his claim against Debtors under a wrongful foreclosure theory because they were not the entities that initiated foreclosure proceedings.  Wells Fargo initiated the foreclosure proceedings and has continued to prosecute the foreclosure since that initiation.  Mr. Ray cannot maintain a claim against either Debtor Green Tree or Debtor Ditech for the actions of Wells Fargo.[8]

2.        **The Consent Decree**

Although the Bankruptcy Court did not expressly evaluate whether Appellant had stated a claim as a third party seeking to enforce the CFPB/FTC consent decree, that omission did not constitute reversible error because Mr. Ray lacks standing to enforce the consent decree.  The CFPB and FTC entered into a consent decree with Green Tree on April 23, 2015 in the United States District Court for the District of Minnesota.  *See Federal Trade Commission v. Green Tree Servicing LLC*, No. 15-cv-2064, ECF No. 5 (D. Minn. Apr. 23, 2015) ("Decree").  Mr. Ray argues that Debtors violated that consent decree.  *See* Sur-reply at 4.  The Bankruptcy Court did not consider whether Mr. Ray, as a non-party to the decree, had nonetheless stated a claim as a third party seeking to enforce the terms of a consent decree.  *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 958 (8th Cir. 2002).  Because this is a purely legal question for which no further factual development is

---

[8] The Appellee argues that, as the court did in *Hunt v. Mortgage Electronic Registration*,  the Court should abstain from entertaining any wrongful foreclosure claim under *Colorado River.*  522 F. Supp. 2d 749, 753 (D.S.C. 2007).  Because the Court agrees that Mr. Ray has not stated a claim against Debtors on a wrongful foreclosure theory, it declines to reach this issue.

necessary, the Court will exercise its discretion to decide this issue even though it was not raised

below.  *See Baker*, 239 F.3d at 420.

Generally, "strangers to a consent decree generally do not have standing" to enforce its

terms.  *Pure Country, Inc.*, 312 F.3d at 958.  "In order for a third party to be able to enforce a consent

decree, the third party must, at a minimum, show that the parties to the consent decree not only

intended to confer a benefit upon that third party, but also intended to give that third party a legally

binding and enforceable right to that benefit."  *Id.*

Mr. Ray does not have standing to enforce the consent decree because the consent decree

did not confer upon Mr. Ray a legally binding and enforceable right to enforce its terms.  The

consent decree does not include any explicit stipulation allowing for third party enforcement.  *See*

*generally* Decree.  It contemplates actions by third parties, but only as independent actions rather than

as third-party actions to enforce the terms of the Decree.  *See id.* at 7 (defining "related consumer

action" as an action brought "on or on behalf of one or more consumers . . . against [Green Tree]

based on substantially the same conduct or issues as alleged in the complaint"); *see also id.* at II.E

(prohibiting Green Tree from arguing that any penalty paid pursuant to the consent decree should

be offset from penalties levied in a related consumer action).  The Decree provides for its own

mechanism of compliance reporting, which only requires Green Tree to submit "compliance reports

or other requested information" to the plaintiff agencies upon request.  *Id.* at XX.  Therefore, the

Court joins all of the courts in the Eighth Circuit to consider the issue in concluding that nothing in

the Decree can be read to confer standing to sue on Mr. Ray.  *See Fed. Trade Comm'n v. Green Tree*

*Servicing LLC*, No. 15-cv-2064, 2018 WL 614472, at *3 (D. Minn. Jan. 8, 2018)*, report and*

*recommendation adopted sub nom. Fed. Trade Comm'n & Consumer Fin. Prot. Bureau v. Green Tree Servicing,*

*LLC*, No. 15-cv-2064, 2018 WL 614731 (D. Minn. Jan. 29, 2018) (finding that *pro se* intervenor did

not have standing to enforce the consent decree); *see also LeMaster v. Ditech Fin. LLC*, No. 17-cv-

5101, 2018 WL 3696605, at *2 (D. Minn. Aug. 3, 2018), *aff'd in part*, 782 F. App'x 519 (8th Cir. 2019), and *aff'd in part, appeal dismissed in part*, 801 F. App'x 452 (8th Cir. 2020) (same).

### 3.    SCUTPA

The Bankruptcy Court should have expressly evaluated Mr. Ray's claim as arising under the South Carolina Unfair Trade Practice Act, S.C. Code Ann. §§ 39-5-10, *et seq.* SCUTPA establishes a private right of action for actual damages for any "person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a [practice declared unlawful under S.C. Code Ann. § 39-5-20] . . . ." *Id.* § 39-5-140(a). It is the "intent of the [South Carolina] legislature" that courts consider the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), to construe the statute's definition of an unfair method of competition. *See* S.C. Code Ann. § 39-5-20(a), (b). In addition to showing that a defendant engaged in an unlawful practice and that a plaintiff suffered actual damages, a plaintiff must allege and prove that "the unfair or deceptive act or practice [has] an impact upon the public interest." *York v. Conway Ford, Inc.*, 480 S.E.2d 726, 728 (S.C. 1997). "Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition." *Id.* "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004).

As Appellee identifies in her opposition to Mr. Ray's appeal, Mr. Ray's proof of claim and his other submissions raise a possible SCUTPA claim that the Bankruptcy Court should have considered, consistent with its obligations to *pro se* litigants. Mr. Ray's original proof of claim attached a letter from the CFPB and a check in connection with a settlement between the CFPB, the FTC, and Green Tree. Trustee Reply at 3. His sur-reply elaborates that the enforcement action mentioned in that letter "provide a strong evidentiary foundation that supports [Mr. Ray's]

allegations." Sur-reply at 3. Those allegations include that Debtors did not comply with "established consumer protection obligations." *Id.* at 1. Even though Mr. Ray's only reference to "consumer protection obligations" were the federal causes of action at issue in the consent decree—and he did not identify SCUTPA explicitly—the Bankruptcy Court was still obligated to construe his claims under state laws that parallel federal causes of action. *See McLeod*, 864 F.3d at 156–57 (holding that the district court erred in failing to construe the *pro se* plaintiff's claims as arising under the New York State Human Rights Law and New York City Human Rights Law even though the plaintiff had only identified a Title VII claim).

Although the Court declines to decide whether Appellant has stated a claim under SCUTPA, Appellee's arguments that the Court should find he has not stated a SCUTPA claim on this record are unavailing. Appellee first argues that the "Bankruptcy Court carefully analyzed" Mr. Ray's claims of illegal loan practices and "specifically found the Appellant had failed to allege he had submitted a timely, complete loss mitigation application." Appellee Br. at 34–35 (citing Bankruptcy Op. at 27). But the Bankruptcy Court's analysis of Mr. Ray's allegations under *federal* consumer protection laws—and their attendant requirements, including alleging submission of a complete loan modification application—does not satisfy the Bankruptcy Court's obligation to separately consider *state* causes of action. *See McLeod*, 864 F.3d at 156–57. Appellee next argues that Mr. Ray has not shown how the acts have an impact on the public interest because he "provide[d] no explanation of the potential for Debtors to repeat the same actions." Appellee Br. at 35. That argument arguably ignores the gravamen of Appellant's argument regarding the allegedly unlawful conduct he experienced: Mr. Ray alleges that this conduct—Debtors' alleged non-responsiveness or delayed responses to requests for loan modification—was an example of the conduct that was the subject of a suit filed by the FTC and the CFPB against Debtor Green Tree under 15 U.S.C. §§ 45(a), 53(b) and 12 U.S.C. §§ 5531(a), 5536(a)(1) and 5564. *See* Dkt. No. 6-4 (copy of consent decree filed alongside Appellant's brief). He alleges that the Debtors "failed to abide" by the conditions in the

consent decree entered in that case.  Sur-reply at 1–2.  In essence, he alleges that the conduct he experienced had happened in the past, and that the consent decree did not provide sufficient deterrence against future violations.  Accordingly, the Bankruptcy Court should have the opportunity to evaluate whether Mr. Ray has pleaded facts to state a claim under SCUTPA.

### E.    Leave to Amend

Though the Bankruptcy Court should have expressly evaluated whether Mr. Ray should be granted leave to amend, the Court declines to decide if Mr. Ray should be granted leave to amend because it does not have the full record before it.  Motions to amend proofs of claim are governed by Federal Rule of Bankruptcy Procedure 7015, which references Federal Rule of Civil Procedure 15.  *See* Fed. R. Bankr. P. 7015.  Under Rule 15, courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defect, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)); *see also In re Schneorson*, No. 1-22-40494, 2022 WL 4647555, at *15 (Bankr. E.D.N.Y. Sept. 29, 2022) (noting solicitude granted to *pro se* litigants before a bankruptcy court in the context of a motion to amend).

The Court recognizes that Mr. Ray's opportunity to amend his proof of claim may be properly constrained given the timing of any amendment.  Over six years have elapsed since Mr. Ray first filed his proof of claim.  The time to file proofs of claim has long since expired.  *See* ECF 496 (setting deadline to file proof of claim to be June 3, 2019).  And the Bankruptcy Court has confirmed Debtors' reorganization plan under Chapter 11.  *See* ECF 1404.  In the Second Circuit, "[b]ankruptcy courts apply a two-part test to determine whether to accept a late-filed amendment to a timely proof of claim."  *In re Frontier Commc'ns Corp.*, 641 B.R. 64, 73 (Bankr. S.D.N.Y. 2022) (citing

*In re Enron Corp.*, 419 F.3d 115, 133 (2d Cir. 2005)).  "First, courts examine whether the amendment relates back to a timely filed proof of claim."  *Id.*  "Second, if an amendment does relate back to the timely filed claim, courts will then 'examine each fact within the case and determine whether it would be equitable to allow the amendment.'"  *Id.* (citing *In re Enron*, 419 F.3d  at 133).  "For part one of the test, an amendment to a timely filed proof of claim will relate back if it:  1) corrects a defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim."  *Id.*  "For part two of the test, factors that courts consider when balancing the equities include:  (1) undue prejudice to opposing party; (2) bad faith or dilatory behavior on part of the claimant; (3) whether other creditors would receive a windfall were the amendment not allowed; (4) whether other claimants might be harmed or prejudiced; and (5) the justification for the inability to file the amended claim at the time the original claim was filed."  *Id.*

The Court declines to apply the factors from *In re Enron* and remands to the Bankruptcy Court so that it may apply the test with the benefit of the full record.[9]  Even if Mr. Ray can cure deficiencies identified by the Bankruptcy Court and this Court by alleging additional facts that "describe [his] claim with greater particularity," the limited record before this Court is not sufficiently developed to weigh the equities as required by part two of the *In re Enron* test. Accordingly, although the Court acknowledges that *pro se* litigants like Mr. Ray should be granted special solicitude, that solicitude does not override the considerations that the Bankruptcy Court must consider in determining whether a claimant should be granted leave to amend a proof of claim.

---

[9] The Court recognizes that the Bankruptcy Court already denied Mr. Ray leave to amend to add an administrative expense claim, and that similar logic may justify denying leave to amend as to other deficiencies identified with respect to his proof of claim.  *See* Tr. at 31:13–32:2.

## V.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court's order disallowing Mr. Ray's claim is AFFIRMED in part and VACATED in part, and the Court REMANDS this case for further proceedings consistent with this opinion.  The Court affirms the Bankruptcy Court's order as it relates to his claim under the HAMP, TILA, the FDCPA, and RESPA with respect to the 2012 loan modification request.  However, the Court directs the Bankruptcy Court to consider a claim under RESPA's loss mitigation rule as it relates to the alleged 2016 and 2017 attempts to apply for loan modification.  The Court also directs the Bankruptcy Court to determine whether Mr. Ray has pleaded a claim under SCUTPA.  Finally, the Court directs that the Bankruptcy Court determine whether Mr. Ray should be granted leave to amend his proof of claim.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Court requests that counsel for Appellee provide Appellant with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to close this case and to mail a copy of this order to Appellant by certified mail.

SO ORDERED.

Dated: November 11, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge